CHERYL L. SCHRECK, CA Bar No. 130083
cheryl.schreck@ogletreedeakins.com
BETH A. GUNN, CA Bar No. 218889
beth.gunn@ogletreedeakins.com
CATHERINE J. COBLE, CA Bar No. 223461
catherine.coble@ogletreedeakins.com,
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
BBVA COMPASS INSURANCE AGENCY, INC. erroneously named and sued as BBVA COMPASS CONSULTING AND BENEFITS, INC. AND COMPASS BANK

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

CHERYL DEAVER, individually and on behalf of all others similarly situated and on behalf of the general public,

Plaintiffs,

v.

BBVA COMPASS CONSULTING AND BENEFITS, INC.; COMPASS BANK; and DOES 1 through 10, inclusive,

Defendants.

Case No. ____________________________

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**

[Alameda County Superior Court Case No. RG12656697]

Complaint Filed: Nov. 19, 2012
First Amended Complaint Filed: Sept. 6, 2013

# TABLE OF CONTENTS


Page

I. FACTUAL BACKGROUND ..... 1
  A. Plaintiff's Current State Court Action. ..... 1
    1. Prior Removal to Federal Court, Subsequent Remand to State Court, and Petition For Appeal Pursuant to CAFA. ..... 1
    2. Change In Ninth Circuit Authority Regarding CAFA Removals. ..... 2
    3. Plaintiff's Filing of First Amended Complaint in State Court. ..... 2
  B. Plaintiff Previously Pursued an Almost Identical Action in Federal Court. ..... 2
II. DEFENDANTS' REMOVAL IS TIMELY ..... 3
III. FEDERAL JURISDICTION EXISTS PURSUANT TO THE CLASS ACTION FAIRNESS ACT ..... 4
  A. The Size of the Putative Class Exceeds 100. ..... 4
  B. The Parties Are Diverse. ..... 5
    1. BBVA Compass Consulting is a Texas Corporation. ..... 5
    2. Compass Bank is A State-Chartered Bank Incorporated in Alabama. ..... 5
    3. The Putative Class of Employees Who Work or Worked in California Are Primarily Citizens of California. ..... 6
  C. The Amount In Controversy Exceeds An Aggregate of $5,000,000.00. ..... 6
  D. The Amount in Controversy for Plaintiff's Claims Exceeds $5,000,000. ..... 6
    1. Failure to Pay Wages For "Off-the-Clock" Work. ..... 7
    2. Failure to Provide Adequate Meal Periods. ..... 9
    3. Waiting Time Penalties. ..... 11
    4. Failure to Provide Accurate Wage Statements. ..... 12
    5. Attorney's Fees. ..... 12
IV. THE REQUIREMENTS OF 28 U.S.C. 1446 HAVE BEEN SATISFIED ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bell Atlantic Corp. v. Twombly*
127 S.Ct. 1955 (2007) .......... 3

*Bolton v. U.S. Nursing Corp.*
2012 WL 5269738 (N.D. Cal. Oct. 23, 2012) .......... 11

*Doe v. D.M. Camp & Sons*
2009 WL 921442 (E.D. Cal. Mar. 31, 2009) .......... 10

*Guglielmino v. McKee Foods Corp.*
506 F.3d 696 (9th Cir. 2007) .......... 6, 12

*Hernandez v. Towne Park, Ltd.*
2012 WL 2373372 (C.D. Cal. June 22, 2012) .......... 12

*Iqbal v. Ashcroft*
129 S.Ct 1937 (2009) .......... 3

*Jasso v. Money Mart Express, Inc.*
2012 WL 699465 (N.D. Cal. Mar. 1, 2012) .......... 7, 8, 12

*Lowdermilk v. U.S. Bank Nat'l Assoc.*
479 F.3d 994 (9th Cir. 2007), *overruled by Rodriguez v. AT & T Mobility Services LLC*, ---F.3d---, 2013 WL 4516757 (9th Cir. 2013) .......... 1

*Muniz v. Pilot Travel Centers LLC*
2007 WL 1302504 (E.D. Cal. May 1, 2007) .......... 6, 9, 10, 13

*Ray v. Wells Fargo Bank, N.A.*
2011 WL 1790123 (C.D. Cal. May 9, 2011) .......... 8

*Rodriguez v. AT & T Mobility Services LLC*,
---F.3d---, 2013 WL 4516757 (9th Cir. 2013) .......... 1, 2, 6

*Sanchez v. Wal-Mart Stores, Inc.*
2007 WL 1345706 (E.D. Cal. May 8, 2007) .......... 6, 13

*Standard Fire Ins. Co. v. Knowles*
133 S. Ct. 1345 (2013) .......... 2

*Stevenson v. Dollar Tree Stores, Inc.*
2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) .......... 7, 11, 13

*Tomlinson v. Indymac Bank, F.S.B.*,
359 F.Supp.2d 891 (C.D. Cal. 2005) .......... 10

*Tompkins v. C & S Wholesale Grocers, Inc.*
2011 WL 2710288 (E.D. Cal. 2012) .......... 10

*Wachovia Bank, NA v. Schmidt*
546 U.S. 303 (2006) .......... 5

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*
2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) .......... 14

**FEDERAL STATUTES**

28 U.S.C. § 1332 .......... 4, 5

28 U.S.C. § 1441 .......... 6

**OTHER AUTHORITIES**

Central District L. R. 83-1.2 .......... 14

Northern District L. R. 303(c) .......... 14

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA; AND TO PLAINTIFF CHERYL DEAVER AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants BBVA Compass Insurance Agency, Inc. erroneously named and sued as BBVA Compass Consulting and Benefits, Inc. (hereinafter "BBVA Compass Consulting") and Compass Bank (hereinafter "Compass") (hereinafter collectively referred to as "Defendants") hereby remove the above-entitled action from the Alameda County Superior Court to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 on the following grounds:

## I. FACTUAL BACKGROUND

### A. Plaintiff's Current State Court Action.

#### 1. Prior Removal to Federal Court, Subsequent Remand to State Court, and Petition For Appeal Pursuant to CAFA.

On or about November 19, 2012, Plaintiff Cheryl Deaver (hereinafter "Plaintiff") filed an action against Defendants entitled *Cheryl Deaver, individually and on behalf of all others similarly situated and on behalf of the general public, Plaintiffs, v. BBVA Compass Consulting and Benefits, Inc.; Compass Bank, and Does 1 through 10, inclusive, Defendants*, which was assigned the case number RG12656697, in the Superior Court of the State of California, County of Alameda. Defendants removed this action to federal court in January 2013, and the District Court granted Plaintiff's motion for remand in May 2013, finding that Defendants had not satisfied the amount in controversy pursuant to the "legal certainty" test articulated by the Ninth Circuit in *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1002 (9th Cir. 2007), *overruled by Rodriguez v. AT & T Mobility Services LLC*, ---F.3d---, 2013 WL 4516757 (9th Cir. 2013). *See* Declaration of Beth Gunn ("Gunn Decl."), ¶ 4. Defendants timely filed a petition for permission to appeal pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453(c)(1). *See* Gunn Decl., ¶ 5. That petition is still pending in the Ninth Circuit. *See* Gunn Decl., ¶ 5.

**2. Change In Ninth Circuit Authority Regarding CAFA Removals.**

While Defendants' petition was pending, the Ninth Circuit issued its decision in *Rodriguez v. AT & T Mobility Services LLC*, ---F.3d---, 2013 WL 4516757 (9th Cir. 2013), which: (1) overruled the "legal certainty" test as a result of the U.S. Supreme Court's decision in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013), and articulated that the "preponderance of the evidence" test is the correct test to apply to CAFA removals; and (2) stated that, for CAFA removals, district courts examining the amount in controversy "must necessarily 'look beyond the four corners of the complaint' when the complaint alleges damages below the jurisdictional minimum." 2013 WL 4516757, at *6.

**3. Plaintiff's Filing of First Amended Complaint in State Court.**

In the meantime, Defendants filed a demurrer to Plaintiff's Complaint in Alameda County Superior Court, which was granted, with leave to amend, on August 28, 2013. *See* Gunn Decl., ¶ 6. On September 6, 2013, Plaintiff served on Defendants, via their counsel, a First Amended Complaint ("FAC"). *See* Gunn Decl., ¶ 6. The FAC asserts the following claims for relief: (1) Failure to Pay Wages for Hours Worked; (2) Failure to Provide Meal Periods or Compensation in Lieu Thereof; (3) Failure to Timely Pay Wages Due at Termination; (4) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions; and (5) Violation of Unfair Competition Law. *See* Gunn Decl., ¶ 6, Ex. C. *See also* Exhibit A attached hereto, which contains the entirety of the pleadings, process and orders served upon Defendants in the current State Court Action.

**B. <u>Plaintiff Previously Pursued an Almost Identical Action in Federal Court.</u>**

On July 5, 2012, Plaintiff stipulated to dismiss without prejudice a lawsuit then pending in the Central District of California entitled *Cheryl Deaver, individually and on behalf of all others similarly situated and on behalf of the general public, Plaintiffs, v. BBVA Compass Consulting and Benefits, Inc., a Texas corporation; Compass Bank, an Alabama corporation; and Does 1 through 10, inclusive, Defendants*, Case No. EDCV11-1489 PSG (OPx), that was practically identical to the current action (hereinafter "the Prior Action").[1] *See* Gunn Decl., ¶ 3. Plaintiff's dismissal

[1] Defendants respectfully request that the Court take judicial notice, pursuant to Federal Rule of

followed an adverse ruling in which the Hon. Philip Gutierrez of the Central District of California determined that, following Plaintiff's failure to comply with the Central District's Local Rule 23-3, Plaintiff could not pursue the action as a class action. *See* Gunn Decl., ¶ 3. In the Prior Action, in lieu of opposing Defendants' intended motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to plead with specificity sufficient to articulate a plausible basis entitling Plaintiff to relief, as required by *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) and *Iqbal v. Ashcroft*, 129 S.Ct 1937, 1940-1941 (2009), Plaintiff opted to file a Second Amended Complaint ("SAC") alleging with more specificity the basis for each of her claims for relief. *See* Gunn Decl., ¶ 3, Ex. B. In particular, Plaintiff added allegations in support of her failure to pay wages claim alleging that each and every putative class member worked at least 12 minutes per day off-the-clock, and that any class member acting as a "second" for opening or closing duties worked an additional 15-30 minutes off-the-clock for each shift in which he or she acted as a second. (SAC, ¶ 14). Plaintiff also added allegations in support of her meal period claim that "over a thousand" putative class members were not provided with meal periods because, among other things, they were always expected to remain on the premises and they were required to complete "daily updates" during their lunch periods. *See* Gunn Decl., ¶ 3, Ex. B (SAC, ¶ ¶11, 24).

## II. DEFENDANTS' REMOVAL IS TIMELY

Pursuant to 28 U.S.C. section 1446(b)(3), where "the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading…" Here, the district court decided in May 2013 that, based on the initial pleading in this action and the law as it existed at the time, the case was not removable. However, this notice of removal, filed within thirty days after Defendants' receipt of the FAC on September 6, 2013, via service upon Defendants' counsel, is timely.

---

Evidence 201, of all papers referenced herein that were filed in the Prior Action, including Plaintiff's Second Amended Complaint. *See* Gunn Decl., ¶ 3, Ex. B.

## III. FEDERAL JURISDICTION EXISTS PURSUANT TO THE CLASS ACTION FAIRNESS ACT

This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332(d) and is one that may be removed by Defendants pursuant to 28 U.S.C. §§ 1441 and 1453, in that the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. Pursuant to CAFA, federal district courts have original jurisdiction over a class action if: (1) it involves 100 or more putative class members; (2) any class member is a citizen of a state different from any defendant; and (3) the aggregated amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

Defendants are the only named and served defendants in this matter. The consent of any other defendants is therefore inapplicable. In any event, this action may be removed solely by Defendants without the consent of other defendants pursuant to CAFA, 28 U.S.C. § 1453(a).

### A. The Size of the Putative Class Exceeds 100.

Plaintiff defines the class as consisting of: (1) All persons who, for the four years prior to the filing of this class action to the present, are or have been employed by Defendants in the State of California as “financial sales advisors,” “tellers,” or “teller supervisors” and classified as non-exempt employees. (FAC, ¶ 21.) Plaintiff further seeks to represent a subclass consisting of: (2) All persons who were formerly employed by Defendants in the State of California as non-exempt “financial sales advisors,” “tellers” or “teller supervisors” and have separated from their employment with Defendants at any time during the three year period prior to the filing of this class action to the present. (FAC, ¶ 22.) Defendants’ records indicate that approximately 754 individuals were employed as current and former non-exempt employees in California from November 19, 2008 to the present, who are potentially members of the class as defined and some of those individuals are also members of the subclass as defined. *See* Gunn Decl., ¶¶ 7, 11; Declaration of Sheila Anyiwo (hereinafter “Anyiwo Decl.”), ¶ 5, Ex. F; Declaration of Sharon Burton (hereinafter “Burton Decl.”), ¶ 5. Therefore, this action involves 100 or more putative class members.

**B. <u>The Parties Are Diverse.</u>**

**1. BBVA Compass Consulting is a Texas Corporation.**

Defendants were, at the time of the filing of this action, and still are, corporations formed under the laws of states other than California. BBVA Consulting and Benefits, Inc. was a corporation formed under the laws of the State of Texas until it merged with BBVA Compass Insurance Agency, Inc., also a Texas corporation, on July 16, 2012. BBVA Compass Consulting and Benefits, Inc.'s principal place of business was located in Houston, Texas. *See* Geisler Decl., ¶ 2. BBVA Compass Insurance Agency, Inc.'s principal place of business is also located in Texas. *See id*. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." BBVA Compass Consulting's principal place of business and current operations is located in Houston, Texas. *See id*. Accordingly, BBVA Compass Consulting is not a citizen of the State of California.

**2. Compass Bank is A State-Chartered Bank Incorporated in Alabama.**

In addition, Compass was, at the time of the filing of this action, and still is, a state-chartered bank organized and incorporated under the laws of the State of Alabama, with its principal place of business in Birmingham, Alabama. *See* Geisler Decl., ¶ 3. State chartered banks are deemed citizens of the state of their incorporation and principal place of business. *See Wachovia Bank, NA v. Schmidt*, 546 U.S. 303, 306 (2006). Compass' corporate headquarters is located in Birmingham, Alabama. All human resource policies and procedures of Compass are established in Birmingham, Alabama. *See* Geisler Decl., ¶ 4. The vast majority of the corporate books and records of Compass are maintained in Houston, Texas. *Id.* Compass' core information technology platforms, computer networking systems, and operation centers are located in Birmingham, Alabama. *Id.* The accounting group, corporate finance group, and treasury functions are also located in Birmingham, Alabama. *Id.*

Accordingly, Compass is not a citizen of the State of California.

**3. The Putative Class of Employees Who Work or Worked in California Are Primarily Citizens of California.**

Members of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a). Accordingly, the diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met.

**C. <u>The Amount In Controversy Exceeds An Aggregate of $5,000,000.00.</u>**

In order to remove a class action pursuant to CAFA, the amount in controversy must exceed the jurisdictional minimum of $5,000,000. It is the removing party's burden to establish that the amount in controversy exceeds the jurisdictional minimum pursuant to the "preponderance of the evidence standard," which requires evidence indicating that the amount in controversy "more likely than not" exceeds the jurisdictional minimum. *See Rodriguez*, ---F.3d---, 2013 WL 4516757 (9th Cir. 2013).

In determining the amount in controversy for CAFA, all potential damages based on the claims in the complaint, as well as attorney's fees, are included. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (unspecified attorney's fees are appropriately counted toward the amount in controversy in CAFA removal actions); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (slip copy) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint."); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (slip copy) (holding that, in a CAFA action, attorney's fees are part of the amount in controversy).

**D. <u>The Amount in Controversy for Plaintiff's Claims Exceeds $5,000,000.</u>**

The amount in controversy in this matter exceeds $5,000,000. In particular, the following amounts are in controversy in Plaintiff's putative class claims as set forth and described in more detail below:

| Claim | Amount in Controversy |
| --- | --- |
| Failure to Pay Wages (Off-the-Clock work) | **$2,245,156** |

| | |
|---|---|
| Failure to Provide Meal Periods | **$3,799,611** |
| Waiting Time Penalties | **$1,325,865** |
| Failure to Provide Accurate Wage Statements | **$1,377,300** |
| Attorneys' Fees | **$1,237,080** |
| **Total** | **$9,985,012** |

*See* Gunn Decl., ¶¶ 9-28; Ex. D.

**1. Failure to Pay Wages For "Off-the-Clock" Work.**

In her First Cause of Action, Plaintiff seeks to recover all overtime wages that were not paid to class members, plus interest and penalties thereon, attorneys' fees and costs. (FAC, ¶¶ 32-34.) Plaintiff alleges in her complaint that "Defendants **consistently** maintained and enforced against the Class Members the following unlawful **policies and practices**, in violation of California state wage and hour laws: (a) Defendants have had a **consistent policy** of failing to compensate Class Members within the State of California, including Plaintiff, for hours worked;" (FAC, ¶ 2(a)) and "by their **policies of**: (a) Failing to pay employees for all hours worked, whether regular time or overtime; and/or (b) requiring employees to work 'off the clock' and without compensation Defendants willfully violated the provisions of the Labor Code..." (FAC, ¶ 33, in support of Plaintiff's first cause of action for failure to pay wages for hours worked) (emphasis added).

When performing an analysis of the amount in controversy where a plaintiff alleges a "consistent" or "uniform" policy or practice of violations, it is reasonable to assign a violation rate of one violation per week. *See Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (determining that, "[g]iven the allegations of a 'uniform policy and scheme'…one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff"); *see also Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *2 (E.D. Cal. Oct. 17, 2011) (not reported in F.Supp.2d) (finding that, where the plaintiff alleged that the defendant engaged in "standardized policies and practices of failing to pay the requisite compensation for all hours worked," without any more specific allegations to narrow the potential scope of damages, the complaint did not lend itself to precise calculations, and

defendant's assumptions regarding the scope of potential damages was reasonable). Further, in applying a more stringent standard than the "preponderance of the evidence" standard to be applied here, the *Jasso* court specifically authorized making an assumption that each employee missed one hour of overtime pay each week, or two hours of overtime pay per two-week pay period when a plaintiff alleged a consistent policy violation. 2012 WL 699465, at *5-6; *see also Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding defendant's estimates based on one hour of unpaid overtime per class member per week to be conservative and reasonable when the complaint alleged a consistent policy of failure to pay overtime).

Moreover, pursuant to the Ninth Circuit's directive in *Rodriguez v. AT&T*, it is appropriate for the Court, in examining the amount in controversy here, to "'look beyond the four corners of the complaint' when the complaint alleges damages below the jurisdictional minimum," and consider the evidence relating to the same factual circumstances and claims alleged in the Prior Action, as alleged in Plaintiff's SAC. 2013 WL 4516757, at *6. Based on the allegations in the SAC, it is clear that Plaintiff's claim "more likely than not" will depend on a theory that each and every class member spent at least 12 minutes per day (7 minutes each morning and 5 minutes each evening) engaged in off-the-clock work and that putative class members who acted as a "second" in the opening and closing duties spent an additional 15-30 minutes per day on such duties. *See* Anyiwo Decl. ¶ 3; Gunn Decl., ¶ 10, Ex. B (SAC, ¶ 14.) As a result, it is very reasonable to assess the violation rate of *at least* 12 minutes a day, which equals 60 minutes a week, in determining the amount in controversy for Plaintiff's "off-the-clock" claim.

According to the analysis of Defendants' records performed by their counsel for the purpose of calculating the amount in controversy for this claim, which utilized a four-year statute of limitations, and which assigns a violation rate of at least one hour per week per putative class member, Defendants estimate that the amount in controversy during the relevant time period, November 19, 2008 to the present (hereinafter, "relevant time period") as unpaid wages to be at least **$2,245,156**. *See* Gunn Decl., ¶¶ 16-20;[2] *see also Jasso v. Money Mart Express, Inc.*, 2012

[2] For purposes of effecting removal pursuant to 28 USC § 1332(d), declarations from Defendants constitute sufficient evidence to establish the amount in controversy. *See Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *4 (declaration from the employer's human resources director

WL 699465, at *5 (holding that a four-year statute of limitations should apply in determining the amount in controversy for an off-the-clock claim when coupled with a claim for unfair business practices pursuant to California Business & Professions Code Section 17200). More specifically, the amount of unpaid wages was assessed as overtime wages (or one-and-a-half times each affected employee's regular rate of pay for each week worked) for any putative class member who was a full-time employee, and the amount of unpaid wages for part-time employees was assessed at each employee's regular rate of pay. *See* Gunn Decl., ¶ 12. These assumptions are based on assertions in the Anyiwo Declaration that full-time class members typically worked 8-hour shifts, and part-time class members typically worked less than 8-hour shifts. *See* Anyiwo Decl., ¶¶ 7-8; Gunn Decl., ¶¶ 12, 15.

**2. Failure to Provide Adequate Meal Periods.**

In her Second Cause of Action, Plaintiff seeks to recover wages for each work shift longer than five (5) hours during which the employee was not provided a full thirty (30) minute uninterrupted meal break, as well as one hour's wages in lieu of meal periods, interest, attorney's fees, and costs. (FAC ¶¶ 36-40.) Specifically, Plaintiff alleges in her complaint that "Defendants **consistently** maintained and enforced against the Class Members the following unlawful **policies and practices**, in violation of California state wage and hour laws:…(b) Defendants have had a **consistent policy** of requiring Class Members within the State of California, including Plaintiff, to work at least five (5) hours without a lawful meal period and failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the meal period is not provided, as required by California state wage and hour laws" (FAC, ¶ 2(b)); "Defendants had a **policy and practice** of failing to provide lawful duty-free meal periods for days during the liability period on which Class Members work(ed)/work periods in excess of five hours,

---

regarding the number of employees, pay periods and average rates of pay during the applicable limitations period, which was derived from a compilation of information kept in the normal course of business, constituted sufficient evidence underlying the calculations the employer made to establish the amount in controversy); *see also Muniz*, 2007 WL 1302504, at *2, 3 (holding that removal was proper where amount in controversy was established by information contained in a declaration from the defendant setting forth the underlying facts needed to calculate the amount in controversy based on the allegations in the complaint as well as a declaration from counsel containing the estimated calculations themselves).

and Defendants failed to provide compensation in lieu thereof" (FAC, ¶ 36); and "By failing to provide meal periods on the days Class members worked periods in excess of five hours and failing to compensate said employees one hour's wages in lieu of meal periods, as alleged above, Defendant willfully violated the provisions of Labor Code Sections 226.7 and 512, section 11 of the IWC Wage Orders, and Cal. Code Regs., Title 8, section 11000 *et seq.*" (FAC, ¶ 37) (in support of Plaintiff's second cause of action for failure to provide meal periods or compensation in lieu thereof) (emphasis added).

Through their counsel, Defendants have performed an analysis of their records for the purpose of calculating the amount in controversy for this claim, utilizing a four-year statute of limitations. *See* Gunn Decl., ¶ 13; *see also Tompkins v. C & S Wholesale Grocers, Inc.*, 2011 WL 2710288 (E.D. Cal. 2012) (finding that a four-year statute of limitations period applies to meal period claims brought pursuant to California Labor Code Section 226.7 at the same time as an unfair competition claim pursuant to Cal. Bus. & Prof. Code Section 17200 because the "additional hour of pay" required as a premium wage is a restitutionary wage, which is recoverable under the Unfair Competition Law); *see also Doe v. D.M. Camp & Sons*, 2009 WL 921442, at *13 (E.D. Cal. Mar. 31, 2009) (same) (citing *Tomlinson v. Indymac Bank, F.S.B.*, 359 F.Supp.2d 891, 898 (C.D. Cal., 2005)).

Where no fact-specific allegations are set forth in the complaint to indicate that the putative class or violation rate would be discernibly smaller than 100%, it is appropriate to rely on a defendants' calculations of the amount in controversy based on a violation rate of 100%. *See Muniz*, 2007 WL 1302504, at *4. Here, Plaintiff has not included any factual allegations to indicate that the violation rate will be less than 100%. Moreover, based on the allegations in the SAC, it is clear that Plaintiff's claim "more likely than not" will depend on a violation rate of one missed meal period a day, since the allegations state that putative class members were required to remain on-site during lunch periods and to work through lunch periods, including completing "daily updates" during this time period, which indicates that Plaintiff is seeking damages for this claim based on alleged facts that could deprive each putative class member of a legally-compliant meal period every day. *See* Gunn Decl., ¶ 23, Ex. B (SAC 6:13-7:4). Assessing a violation rate of

100%, Defendants' analysis determined that, based upon the estimate that each class member missed five meal periods per week, the amount of missed meal period compensation in controversy during the relevant time period is at least **$3,799,611**. *See* Gunn Decl., ¶¶ 21-23.

**3. Waiting Time Penalties.**

In her Third Cause of Action, Plaintiff seeks to recover wages and statutory penalties pursuant to Labor Code Section 203. (FAC, ¶¶ 52-54.) Labor Code Section 203 calculates the penalty to be assessed for failure to pay an employee's entire wages at the time of termination or within 72 hours of resignation as 30 days of pay at the employee's regular rate of pay. Plaintiff specifically alleges that "More than 30 days have passed since affected Former Employee Subclass Members have left Defendants' employ, and on information and belief, they have not received payment pursuant to Labor Code Section 203." (FAC, ¶ 54.) Plaintiff further alleges that "[a]s a consequence of Defendants' willful conduct in not paying all earned wages, Plaintiff and the Former Employee Subclass members are entitled to 30 days' wages as a penalty under Labor Code section 203." As set forth in *Bolton v. U.S. Nursing Corp.*, 2012 WL 5269738, at *5 (N.D. Cal. Oct. 23, 2012), an employer may establish the amount in controversy for a waiting time penalty claim pursuant to California Labor Code Section 203 by: (1) assessing a minimum hourly rate based on the regular rate applicable to the putative class; (2) multiplying the hourly rate by the number of average hours worked per shift; (3) multiplying that number by the number of days in the waiting time period; and (4) multiplying that number by the number of putative class members.

According to the analysis of Defendants' records performed by their counsel for the purpose of calculating the amount in controversy in this action, applying a one-year statute of limitations, and assessing a day's wages at the rate of eight hours a day for full-time employees and at the rate of four hours a day for part-time employees (based upon the shift lengths described in the Anyiwo Decl. at ¶¶ 7-8), Defendants determined that the amount in controversy as statutory penalties pursuant to Plaintiff's Third Cause of Action for waiting time penalties is at least **$1,325,865**. *See* Gunn Decl., ¶¶ 24-25; *see also Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (finding it reasonable to assume, in response to allegations in the complaint that members of the putative class routinely missed meal periods, that "all members of the proposed

class…would have missed a meal period as described in the complaint at least once and thus were entitled to the waiting time penalty"); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, at *12 (C.D. Cal. June 22, 2012) (determining that it was reasonable to infer "that each [formerly employed] class member suffered some form of Labor Code violation at some point during his or her employment, and was thus entitled to waiting time penalties").

**4. Failure to Provide Accurate Wage Statements.**

In her Fourth Cause of Action, Plaintiff seeks relief for Defendants' failure to "itemize in wage statements all applicable hourly rates of pay and to accurately report total hours worked and wages earned by Plaintiff and the Class Members" in knowing and intentional violation of Labor Code section 226(a). (FAC, ¶ 56.) Based on the allegations in the Complaint, Plaintiff is seeking penalties pursuant to Labor Code section 226 for failure to provide accurate wage statements. It is appropriate to base an amount in controversy calculation for wage statement penalties upon the number of paychecks issued to the putative class members in the relevant one-year statute of limitations period when the allegations state that the employer had a consistent or uniform policy of violations underlying the wage statement claim. *See Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5-6. According to the analysis of Defendants' records performed by their counsel for the purpose of calculating the amount in controversy in this action, utilizing a one-year statute of limitations, and assessing one violation for each putative class member per pay period for which the employee was issued a paycheck during that statute of limitations period, Defendants determined that the amount in controversy as penalties pursuant to Labor Code Section 226 is at least **$1,377,300**. *See* Anyiwo Decl., ¶ 6; Gunn Decl., ¶ 26.

**5. Attorney's Fees.**

Plaintiff seeks to recover attorney's fees for the overtime, waiting time penalty and wage statement penalty causes of action and bases for recovery contained in the Complaint. In situations where the amount in controversy for compensatory damages does not meet the CAFA amount in controversy requirement, a realistic estimate for attorney's fees alleged in the complaint may be added to satisfy CAFA's amount in controversy threshold. *See Guglielmino*, 506 F.3d at 701 (holding that attorney's fees must be included in determining the amount in controversy in CAFA

removal actions); *Sanchez*, 2007 WL 1345706, at *2 (finding that, even if a more conservative estimate of compensatory damages totaling less than $5,000,000 was appropriate, the addition of alleged attorney's fees should be included in determining the amount in controversy). A realistic estimate of Plaintiff's attorney's fees is 25% of the total recovery. *See Muniz*, 2007 WL 1302504, at *4 n.8 (noting that "in California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement"); *see also Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *7 (authorizing assessment of the amount in controversy for attorneys' fees as 25% of the aggregate damages assessed for the other claims at issue); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *5 (finding it reasonable to assess 25% of the aggregate amount in controversy for other claims as attorneys' fees to be included in the total amount in controversy, in light of how common it is for wage and hour class action settlements in California to include 25-30% of the settlement amount as attorneys' fees). In addition, recent class action settlements reached by Defendants' counsel in federal court have garnered at least 25% of the total damages awarded to the class as attorneys' fees. *See* Gunn Decl., ¶ 27, Ex. E.

Defendants calculate the amount in controversy as attorneys' fees for Plaintiff's overtime, waiting time penalty and wage statement penalty claims as **$1,237,080**, which is the aggregate of 25% of the amounts in controversy for each of those claims. *See* Gunn Decl., ¶ 27.

An extremely reasonable and conservative estimate of the **total amount in controversy**, based on each of the categories listed above, is at least **$9,985,012**. *See* Gunn Decl., ¶ 28. Although Defendants specifically deny Plaintiff's claims and deny that Plaintiff will recover any of the relief she seeks, it is clear from the scope of the relief sought that the amount in controversy arising from the relief Plaintiff seeks exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV. THE REQUIREMENTS OF 28 U.S.C. 1446 HAVE BEEN SATISFIED

In accordance with 28 U.S.C. §1446(a), this notice of removal is filed in the district court of the United States in which the action is pending. The Superior Court of California, Alameda County is located within the Oakland Division of the Northern District of California. This case

was originally removed to the Oakland Division of the Northern District of California in January 2013, but reassigned to the Hon. Jacqueline S. Corley in the San Francisco Division of the Northern District of California shortly after removal. Pursuant to Northern District Local Rule 3-3, this case should now be assigned to the Hon. Corley. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 84(a).[3] In accordance with 28 U.S.C. §1446(a), this notice of removal is accompanied by Exhibit A which comprises copies of all process, pleadings, and orders served upon Defendants in the instant action.

In accordance with 28 U.S.C. §1446(b)(3), Defendants' Notice of Removal was filed within 30 days after the initial date of service of Plaintiff's FAC on September 6, 2013. In accordance with 28 U.S.C. §1446(d), Defendants will give written notice of the original removal of this action to Plaintiff via her counsel and file a copy of that Notice with the Superior Court of California, County of Alameda.

In the event this Court has a question regarding the propriety of this Notice of Removal, Defendants request that it issue an Order to Show Cause so that they may have an opportunity to more fully brief the basis for this removal.

DATED: October 4, 2013

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/Beth A. Gunn
Cheryl L. Schreck
Beth A. Gunn
Catherine J. Coble

Attorneys for Defendants
BBVA COMPASS INSURANCE AGENCY, INC. erroneously named and sued as BBVA COMPASS CONSULTING AND BENEFITS, INC. AND COMPASS BANK

[3] Defendant asserts that venue is proper *only* for purposes of filing the instant Notice of Removal, as required by 28 USC 1446(a). However, venue is not proper in the Northern District of California but in the Central District of California, and specifically, before the Hon. Philip Gutierrez in the Central District of California, pursuant to Northern District Local Rule 3-3(c) and Central District Local Rule 83-1.2. *See also Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003).