UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL DEAVER,<br><br>  Plaintiff,<br><br> v.<br><br>BBVA COMPASS CONSULTING AND BENEFITS, INC., et al.,<br><br>  Defendants. | Case No. 13-cv-00222-JSC<br><br>**ORDER DENYING MOTION TO REMAND, DENYING MOTION TO TRANSFER, AND GRANTING MOTION TO DISMISS**<br><br>**Re: Dkt. Nos. 12, 13, 20** |

Plaintiff filed this putative state law wage and hour class action in Alameda County Superior Court. Defendants BBVA Compass Insurance Agency, Inc. ("BBVA Compass") and Compass Bank (collectively "Defendants") subsequently removed the case to federal court under the Class Action Fairness Act ("CAFA") of 2005. *See* 28 U.S.C. §§ 1332(d), 1441, 1453. Applying the "legal certainty" test set forth in *Lowdermilk v. United States Bank National Association*, 479 F.3d 994, 999 (9th Cir. 2007), the Court granted Plaintiff's motion to remand. Defendants appealed. While the appeal was pending, the Ninth Circuit overruled *Lowdermilk* and held that under CAFA a removing defendant need only establish that the amount in controversy is satisfied by a preponderance of the evidence. *Rodriguez v. AT & T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013). In accordance with *Rodriguez*, the Ninth Circuit reversed and remanded the case to this Court for reconsideration of Plaintiff's motion to remand.

After considering the parties' pre and post-remand submissions, as well as the pleadings in the related case, the Court concludes that Defendants have met their burden by a preponderance of the evidence. Because the Court has diversity jurisdiction of this putative class action, Plaintiff's motion to remand must be DENIED. The Court also concludes, in the exercise of its discretion, that convenience and the interest of justice do not warrant transferring this action to the Central District of California and thus Defendants' motion to transfer must also be

DENIED.  Finally, as the Complaint lacks substantive factual allegations, the motion to dismiss will be GRANTED with leave to amend.

**FACTUAL & PROCEDURAL HISTORY**

**I.   The Prior Action**

Plaintiff initially filed suit in Riverside County Superior Court (the "Prior Action"). Pursuant to CAFA, Defendants removed the Prior Action to the Central District.  (Case No. EDCV11-1489 PSG).  Plaintiff did not move to remand, and the case remained in federal court. Although the parties stipulated and agreed to waive the deadlines for filing a class certification motion set forth in Central District Local Rule 23-3[1] on two occasions, the district court denied both stipulations.  With mediation negotiations pending, Defendants submitted an *ex parte* application for an order clarifying whether the court considered the case a putative class action. The court checked the box on Defendants' proposed order indicating that "[t]his case is not a class action" and filed the order.  (Dkt. No. 3-4 at 6-7.)  Shortly thereafter, the parties stipulated to dismissal of the Prior Action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), with each party to bear her or its own attorneys' fees and costs, and the court so ordered.  (*Id.* at 10-12.)  The stipulation did not contain any conditions or limitations on Plaintiff's ability to file the same, or a similar action, in the future.

**II.   The Present Action**

Approximately four months after the stipulated dismissal of the Prior Action, Plaintiff filed the present putative class action complaint ("the Complaint") in Alameda Superior Court. Plaintiff alleges five causes of action: (1) failure to pay wages for time worked; (2) failure to provide meal periods or compensation in lieu thereof; (3) failure to timely pay wages due at termination; (4) knowing and intentional failure to comply with itemized employee wage statement provisions; and (5) violation of the Unfair Competition Law ("UCL") (codified at California Business & Professions Code § 17200 *et seq.*).

Although the Prior Action involved the same named Plaintiff and Defendants, there are

---

[1] Central District Local Rule 23-3 requires that, outside of circumstances not applicable here, "[w]ithin 90 days after service of a pleading purporting to commence a class action . . . the proponent of the class shall file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court."

2

significant differences between that action and the present Complaint. First, the Prior Action alleged two additional causes of action not present here: a claim for "failure to provide rest periods or compensation in lieu thereof" (Dkt. No. 3-3 at 17-18), and a claim under the Private Attorneys General Act, California Labor Code § 2698, *et seq.* (*Id.* at 23-24.) In addition, Plaintiff's second amended complaint in the Prior Action provides a level of factual detail that is absent from the present Complaint.

### III. Removal and the Motion to Remand

Defendants timely removed the Complaint on the ground that this Court has original jurisdiction under CAFA. In their removal papers, Defendants performed calculations for each of Plaintiff's causes of action on a class-wide basis and determined that the total amount in controversy was $5,772,662. However, as Plaintiff demonstrated in her motion to remand and as Defendants conceded, Defendants' original calculations contained errors that inflated the final amount above the $5,000,000 threshold. Defendants corrected those errors in their subsequent calculations in their opposition to the motion to remand ("Opposition"),[2] but in so doing, they also changed their approach to those calculations. Initially, Defendants based their calculations on the allegations of the Complaint. Upon realizing the errors in their calculations, however, Defendants changed their approach and based their amount in controversy calculations on the more detailed allegations from the Prior Action.

The Court determined that it could not consider Plaintiff's allegations in the Prior Action in determining whether Defendants had proved the requisite amount in controversy to a legal certainty. (Dkt. No. 32 at 5-6.) Applying the legal certainty test to the allegations of the Complaint together with Defendants' evidence, the Court concluded that the amount in controversy was not satisfied and remanded the case to Alameda County Superior Court. Pursuant to CAFA Defendants timely filed a petition with the Ninth Circuit for permission to

---

[2] "[F]or purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) (citing 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.")); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (determining that where defendant had not provided any underlying facts to support its assertion that the jurisdictional amount was met in its notice of removal, but did so in opposition to plaintiff's motion to remand, "the district court did not err in construing [defendant's] opposition as an amendment to its notice of removal").

appeal the remand order. *See* 28 U.S.C. § 1453(c)(1). While the petition was pending, the Ninth Circuit overruled the legal certainty test of *Lowdermilk v. United States Bank National Association*, 479 F.3d 994 (9th Cir. 2007), as a result of the United States Supreme Court's decision in *Standard Fire Ins. Co. v. Knowles,* 133 S. Ct. 1345 (2013), and held that under CAFA a removing defendant must satisfy the amount in controversy by a preponderance of the evidence. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981-82 (2013). *Rodriguez* also held that in determining the amount in controversy courts "must necessarily 'look beyond the four corners of the complaint' when the complaint alleges damages below the jurisdictional minimum." *Id.* at 981. In light of *Rodriguez,* Defendants again removed the action from the Alameda Superior Court and the action was ultimately assigned to this judge. N.D. Cal. No. 13-cv-4598 (JSC). Plaintiff then moved, again, to remand. In the meantime, the Ninth Circuit vacated the remand order in this action and sent the case back to this Court for reconsideration in light of *Rodriguez.* Accordingly, Plaintiff's motion to remand (Dkt. No. 20), as well as Defendants' motions to change venue (Dkt. No. 12) and to dismiss (Dkt No. 13), are currently pending before the Court.

## MOTION TO REMAND

### I. LEGAL STANDARD

"CAFA vests a district court with original jurisdiction over 'a class action' where: (1) there are one-hundred or more putative class members; (2) at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of costs and interest." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citing 28 U.S.C. § 1332(d)(2), 5(B), (6)). A civil action filed in state court may be removed if it could have properly been filed in federal court originally. 28 U.S.C. § 1441. The removal statutes are construed restrictively, however, and the district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). There is a "strong presumption" against removal jurisdiction, *Gaus v. Miles. Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), and doubts as to removability are resolved in favor of remand. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). *See*

4

*also Washington*, 659 F.3d at 847 ("the general principles of removal jurisdiction apply in CAFA cases").

The burden of establishing federal jurisdiction is on the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). This burden "remains, [under CAFA], on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006). The defendant must establish, under a preponderance of the evidence standard, "that the potential damages could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Rodriguez*, 728 F.3d at 982 (applying preponderance standard). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe."). "[T]he [CAFA] statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the . . . proposed class and determin[ing] whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co.*, 133 S. Ct. at 1348. Attorneys' fees are properly included in the calculation. *Garibay v. Archstone Cmties. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013).

A court cannot base a finding of jurisdiction on a defendant's speculation and conjecture; "[r]ather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum." *Fong v. Regis Corp.*, No. C 13–04497 RS, 2014 WL 26996, at *2 (N.D. Cal. Jan. 2, 2014).

**II. ANALYSIS**

Plaintiff's motion for remand is based solely upon her assertion that Defendants have not established that this case meets CAFA's $5 million amount in controversy requirement. The Court disagrees. Under the preponderance of the evidence standard, Defendants have satisfied their burden.

**A. Defendants Can Rely Upon the Allegations of the Prior Action**

As explained above, although Defendants' Notice of Removal relied on the allegations of

5

the Complaint to calculate the amount in controversy, in their revised calculations in opposition to Plaintiff's motion to remand Defendants rely, in part, on allegations made in the Prior Action and, more specifically, in the second amended complaint. *See, e.g.,* Dkt. No. 22 at 5 ("the amount in controversy for the claims in the present action, *based on the calculations warranted by the more specific factual allegations contained in the Second Amended Complaint in the Prior Action*") (emphasis added); *id.* at 20 (calculating amount in controversy for off-the-clock claims based on allegations in the Prior Action); *id.* at 21 ("the allegations in the SAC regarding the meal period claim clearly warrant applying a daily violation rate for each putative class member when assessing the amount in controversy for that claim"). In granting Plaintiff's motion to remand, the Court concluded that it could not rely on Plaintiff's allegations in the Prior Action when considering whether the amount of controversy is satisfied to a legal certainty in this action. The Court reasoned that because the parties stipulated to dismissal of the Prior Action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), the dismissal left "the situation as if the action never had been filed." *City of South Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002) (internal citation omitted). "This means that any future lawsuit based on the same claim [is] an entirely new lawsuit unrelated to the earlier (dismissed) action." *Id.*

In *Rodriguez*, however, the court clarified that in determining the amount in controversy in CAFA cases the court must look beyond the four corners of the complaint. 728 F.3d at 981. Further, the Ninth Circuit has held that *allegations of fact* in an amended or withdrawn pleading are "competent evidence of the facts stated." *Huey v. Honeywell*, 82 F.3d 327, 333 (9th Cir. 1995) (quoting *Kunglig Jarnvagsstyreslsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2nd Cir. 1929)). In *Huey*, for example, the court held that the district court erred in granting summary judgment because allegations of fact in the defendant's initial answers, though subsequently amended and denied, created a material dispute of fact. *Id.* If the party made the allegation "without adequate information, that goes to its weight, not its admissibility." *Id.* (quoting *Kunglig Jarnvagsstyreslsen*, 32 F.2d at 1998). Thus, while the Prior Action was dismissed without prejudice, the Court may consider the allegations previously made by Plaintiff as controvertible evidence.

### B. Defendants Have Proven the Amount in Controversy by a Preponderance of the Evidence

#### 1. Putative Class Size and Aggregate Work Weeks

In performing their amount in controversy calculation, Defendants rely on "data includ[ing], among other things, the respective dates of hire, dates of termination (if applicable), and most recent hourly rate of pay" for each member of the putative class. (Dkt. No. 4 ¶ 4.) From this information Defendants extrapolate an average hourly rate of pay across the putative class members ($14.87), the aggregate weeks worked by the putative class (61,086), and the aggregate number of pay periods for the putative class (10,427). Plaintiff challenges the foundation of Defendants' calculation: the composition and size of the putative class (662 persons).

Plaintiff's Complaint defines the putative class as "[a]ll persons who, for the four years prior to the filing of this class action to the present, are or have been employed by Defendants in the State of California [as] 'financial sales advisors,' 'tellers' or 'teller supervisors' and classified as non-exempt employees." (Dkt. No.1-1 at 36, ¶ 21.) Defendants contend that "two of the three job titles are not actually job titles used by Defendants" (Dkt. No. 22 at 21), and that "if Defendants had narrowed the putative class as Plaintiff suggests, only five people would be members of the putative class, and Plaintiff herself would not be one of them" (*Id.* at 22 (emphasis omitted).)

Defendants therefore offer the declaration of Sheila Anyiwo, the Human Resources-HR Partner for Defendant BBVA Compass. Ms. Anyiwo attests that the job titles of California employees who perform the work of supervising tellers, that is, "teller supervisors," are "Associate Manager" and "Customer Service Coordinator." (Dkt. No. 22-3 ¶ 3.) She attests further that employees that perform the work of tellers carry or carried the job titles "Branch Associate," "P and R Teller," "Branch Associate II," "Senior Branch Associate" and "Senior Teller." (*Id.*) "In addition, Compass has employed individuals in California in positions with variants of the same title, including 'Financial Sales Advisor II,' 'Senior Financials Sales Advisor,' 'Financial Sales Representative,' . . . "Financial Sales Consultant." *Id.* Defendants' identification of class members is based on these job titles, rather than the literally identical titles alleged in the Complaint. Based on these job titles, Defendants' review of their payroll records

7

for the relevant time frame shows 662 class members as of the time of the initial removal of this action. *See* Dkt. No. 4 ¶ 6 .[3]

This evidence is sufficient to support a finding of 662 class members by a preponderance of the evidence. Plaintiff does not make any argument to dispute Defendants' calculation; for example, she does not contend that she did not intend to include in her class definition all of the titles included by Defendants. Instead, Plaintiff argues Defendants' showing is insufficient because Defendants do not detail the job duties of these various positions. The Court is not persuaded that such details are required to meet the preponderance of the evidence standard, at least in the absence of any contrary evidence or allegations. *See Moreno v. Ignite Restaurant Grp.*, No. C 13–05091 SI, 2014 WL 1154063, at *4 (N.D. Cal. Mar. 20, 2014) (commenting that declaration from Senior Humans Resources Director as to number of class members, average wage rate, and total number of work weeks was sufficient to establish those facts, although other variables were not supported). The decision in *Anderson v. Schwan Food Co.*, No. C 13–2362 PJH, 2013 WL 3989562 (N.D. Cal. Aug. 2, 2013), is distinguishable. There the defendant simply assumed a number of class members based on a current number of employees. *Id.* at *4. Here, in contrast, Defendants have actually counted the number of putative class members based on their records.

Plaintiff also challenges Defendants' calculation of the aggregate work weeks. While Defendants performed such calculation using the actual start and termination dates of each putative class member, they did not discount the number for vacation, sick or other leave. In other words, Defendants' calculation assumes every class member worked every week of their employment—an assumption belied by common sense. While the Court does not necessarily agree that removing defendants must precisely calculate the actual work weeks of each putative

---

[3] At oral argument on April 24, 2014, the parties agreed that this Court could review and rely upon the pleadings in the related action in deciding the pending motion to remand in this action. Such reliance, however, is limited. The question here is whether Defendants have proven the amount of controversy as of the removal date of this action: January 16, 2013. In the related action, Defendants removed the case in September 2013, and thus the evidence offered was different and the class size larger. *See* Case No. 13-cv-4598 JSC, Dkt. No. 6 ¶ 11 (attesting that "the total number of putative class members as of September 13, 2013 was 754.") (emphasis omitted). Thus, the Court will not rely on Defendants' evidence in the related action as to the number of class members, average hourly pay rate, and similar figures in deciding the motion to remand this action.

1  class member, Defendants have not demonstrated by a preponderance of the evidence that each
2  class member worked every work day during their employment with Defendants. Accordingly,
3  the Court will reduce the aggregate work weeks by ten percent, for a new total of 54,977.[4]

### 2. The Value of Plaintiff's Claims

#### a. *First Cause of Action: Off-the-Clock Work*

Plaintiff's first cause of action alleges that "by their policies of: (a) Failing to pay employees for all hours worked, whether regular time or overtime; and/or (b) Requiring employees to work 'off the clock' and without compensation Defendants willfully violated the provisions of the [California] Labor Code, including section 1194, the applicable IWC Wage Orders, and California law." (Dkt. No. 1-1 at 39, ¶ 33.)

While the Complaint lacks factual detail, the Prior Action specifically identified two challenged off-the-clock violations: (1) failure to pay for work performed before an employee is able to clock in and after she clocks out, and (2) failure to pay for opening the branch duties.

#### i. Unpaid duties prior to clocking in and after clocking out

In the Prior Action Plaintiff alleged Defendants'

> timekeeping system resulted in approximately 7 minutes of additional "off the clock" work for each and every one of the Class Members, because it took approximately 7 minutes to start up a computer and proceed through several screens, until the Class Member could reach the timeclock application and clock in to work. Additionally, BBVA policies resulted in approximately 5 minutes of "off the clock" work for each and every Class Member at the conclusion of their day shifts.

(Dkt. No. 3-3 [Ex. O] ¶ 14(a).) By this very specific allegation Plaintiff contends that each class member worked 12 minutes a day—one hour per five-day week—without pay. Plaintiff does not disavow this earlier detailed allegation; for example, she does not insist that she was mistaken and that in fact fewer than all class members worked without pay or that the amount of unpaid time is less than previously alleged. Accordingly, the Court finds that Defendants have shown by a preponderance of the evidence that there is at least one hour of unpaid work per class member per work week at issue on this claim.

The next question, then, is what rate of pay should apply to the one hour of unpaid work

---

[4] This number is rounded down from 54,977.4.

9

1   per work week. Defendants have shown by a preponderance of the evidence that approximately
2   70% of their employees work full-time and 30% work part-time. (Dkt. No. 22-2 ¶ 8.) They have
3   also offered evidence that their full-time employees were expected to *and* regularly did work 40
4   hours per week. (Dkt. No. 22-3 ¶ 2.). *See Rea*, 742 F.3d at 1239 (holding that uncontradicted
5   evidence that managers worked more than 45 hours per week was sufficient to meet
6   preponderance of the evidence standard). Thus, the one hour of unpaid time per work week
7   should be calculated at the overtime rate for 70% of the total work weeks (38,483.9 weeks), and
8   at the regular rate of pay for the remaining 30% (16,493.1 weeks). For the full-time employees,
9   the total amount in controversy is $858,575.81 (38,483.9 full-time work weeks multiplied by
10  $22.31). For the remaining part-time employees the total amount at issue is $245,252.40
    (16,493.1 multiplied by $14.87).

### ii. Unpaid branch opening duties

In the Prior Action, Plaintiff also alleged an additional off-the-clock violation that only affected some class members; namely, that at each of the 65 California branches one class member was required to "open" the branch each morning. These duties resulted in 15 minutes of unpaid time each day for one employee class member at each branch. (Dkt. No. 3-3 [Ex. O] ¶ 14(a).) Once again Plaintiff does not disavow these factual allegations or otherwise make new allegations inconsistent with this theory of unpaid wages. Thus, the Court finds that for one class member at each branch for each work day there is 15 minutes of unpaid time at issue. Defendants incorrectly calculate this amount as 30 minutes per day, and in doing so calculate the amount in controversy as $643,729. (Dkt. No. 22-2 ¶ 12(a).) At a minimum, then, this amount must be cut in half.

There is another flaw in Defendants' calculation. Defendants assume that the non-exempt opening employees were all full-time employees and therefore the unpaid 15 minutes per day must be calculated at the overtime rate. (Dkt. No. 22-2 ¶ 12(a).) There is no evidence in the record, however, to support that assumption and in their other calculations Defendants use a 70% full-time/30% part-time split. The same percentages should apply here. As there are 65 branches, each allegedly failing to pay one class member for 1.25 hours of work per week (15 minutes per day for five days), the Court will assume that 70% of those branches utilized full-

10

1  time workers to perform the unpaid opening services and 30% utilized part-time employees.  For
2  the 70% of branches utilizing a full-time employee (45.5), the total amount in controversy is
3  $225,860.86.  This amount is calculated by multiplying the number of branches (45.5) by the
4  numbers of weeks in the class period (178) by hours per week of off-the-clock time (1.25) by the
5  average overtime rate ($22.31).  The amount in controversy for the part-time employees doing
6  off-clock opening services is $64,517.21.  This amount is calculated in the same manner as for
7  full-time employees, except that it is based on 19.5 branches and an hourly wage rate of $14.87.

### iii.  Summary of off-the-clock cause of action

Thus, on Plaintiff's first cause of action for unpaid work, Defendants have demonstrated by a preponderance of the evidence that the amount at issue is at least $**1,394,206.28**.  To this amount must be added 25% for attorneys' fees ($**348,551.57**), for a total of **$1,742,757.85** in controversy.

### b.  *Second Cause of Action: Failure to Provide Meal Periods*

Plaintiff's second cause of action alleges that "Defendants had a policy and practice of failing to provide lawful duty-free meal periods for days during the liability period on which Class Members work(ed)/work periods in excess of five hours, and Defendants failed to provide compensation in lieu thereof" and that such failure was a "willful[] violat[ion of] the provisions of [California] Labor Code sections 226.7 and 512, section 11 of the IWC Wage Orders, and Cal. Code Regs., Title 8, section 11000 *et seq*."  (Dkt. No. 1-1 at 40, ¶¶ 36-37.)

The primary issue here with respect to the amount in controversy is the violation rate, that is, the frequency of missed meal breaks.  The Complaint makes no allegations with regard to frequency.  Citing *Jasso v. Money Mart Express*, No. 11–CV–5500 YGR, 2012 WL 699465, at *3 (N.D. Cal. Mar. 1, 2012), Defendants' Notice of Removal assumed one missed meal period per week per full-time class member for a claim valued at $599,613.  In their Opposition, Defendants revised their calculation.  Relying on specific factual allegations from the Prior Action, Defendants assume every full-time putative class member missed every single meal period.  They contend such assumption is appropriate because in the Prior Action Plaintiff alleged that financial sales advisors and teller supervisors were not allowed to leave the bank premises during meal periods, and tellers were required to review "daily updates" during lunch

11

periods.

In the Prior Action, Plaintiff specifically alleged that "Financial sales advisors and teller supervisors were not allowed to leave the bank premises during meal periods, thereby resulting in consistent and universal meal period violation." (Dkt. No. 3-3 [Ex. O] ¶ 11(a).) "When these employees were allowed to clock out for meal periods, they were required to remain within a distance such that they could be called back to help customers . . ." (*Id.*) Tellers were required "to review its 'daily updates' during lunch periods, which interrupted those lunch periods and resulted in consistent and universal meal period violations." (*Id.* at 8.) These detailed allegations suggest that the full-time supervisor class members were not provided their legally-mandated meal break every day they worked—that is, a 100% violation rate. As Plaintiff has not disavowed or contradicted her earlier allegations, the Court finds that a 100% meal break violation rate for these employees is at issue. The decision in *Ornelas v. Children's Place Retail Stores, Inc.*, LA CV13-02226 JAK, 2013 WL 2468388 (C.D. Cal. June 5, 2013), is distinguishable. There the court held that the defendant had not met its burden of showing that one missed meal period per week was at issue because there was nothing in the complaint, and no evidence in the record, that suggested such a violation rate. *Id.* at *4. Here, in contrast, Plaintiff's very detailed allegations in the Prior Action support an inference of a 100% violation rate for certain employees.

As for the other class members— those who are not teller supervisors or financial sales advisors or hold similar positions—Plaintiff previously alleged that Defendants required these employees to complete their "daily updates" during lunch. (Dkt. No 3-3 [Ex. O] ¶ 11(a).) The record does not define "daily updates," although their title suggests they were completed daily. If so, then this allegation, too, could support a finding of an allegation of a 100% violation rate, although that seems unlikely. Nonetheless, in light of this allegation, and the allegation as to financial sales advisors and teller supervisors, it is reasonable to assume a class-wide violation rate of two missed meal periods per week. This assumption is not based on speculation or conjecture, but rather on Plaintiff's own detailed allegations—allegations that she has not disavowed or contradicted in any manner.

The missed meal period claim applies only to full-time work. *See* Cal. Lab. Code

1  § 512(a). Thus, to calculate the amount at issue, the total number of work weeks (54,977) are
2  multiplied by 70%, to yield the number of weeks worked by full-time employees (38,483.9).
3  This number is then multiplied by two missed meal periods at a penalty of one hour each at the
4  average hourly rate of $14.87 per hour for a total of $1,144,511.20. Attorneys' fees are not
5  available on meal period claims under California Labor Code section 226.7. *See Kirby v.*
6  *Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1248 (2012).

### c. *Third Cause of Action: Failure to Timely Pay Wages Due at Termination*

Plaintiff's third cause of action alleges that Defendants willfully failed to pay members of the proposed subclass—those class members who were previously employed by Defendants but who quit or were terminated within the three-year statute of limitations—all wages due within 72 hours of their separation. Under section 203 of the California Labor Code, such a violation results in a penalty of one full day's wages for each day that the unpaid wages remain outstanding, with a limit of 30 days. Since Plaintiff alleges that each and every class member worked off the clock, all members of the subclass have a claim for waiting time penalties for the full 30 days, assuming each terminated their employment with Defendants more than 30 days before this lawsuit was filed. Given the relatively small size of the class here, it is likely that nearly all of the subclass members were separated from their employment with Defendants more than 30 days before the lawsuit was removed, and for any that did not, the difference in the calculation of the amount in controversy would be negligible. Thus, the Court will accept Defendants' calculation of the value of this claim, including attorneys' fees, as $1,281,645.30.

### d. *Fourth Cause of Action: Itemized Employee Wage Statement Provisions*

Plaintiff's fourth cause of action alleges that by failing to properly maintain records demonstrating "when the employee begins and ends each work period, total hours worked and applicable rates of pay, and meal periods," Defendants "knowingly and intentionally failed to comply with" section 226(a) of the California Labor Code. (Dkt. No. 1-1 ¶¶ 56-57.) Section 226(e) provides that an employee suffering a knowing and intentional violation of this requirement is entitled to the greater of either her actual damages or "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for

13

each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

Defendants have established the value of this claim as $1,262,000 by a preponderance of the evidence. Defendants identify an aggregate total of 10,427 pay periods within the one-year statute of limitations. This number is multiplied by $100 to determine the total amount of penalties if all penalties were charged at $100. The result is $1,042,700. However, the first penalty is only assessed at $50. Therefore, the total number of putative class members (662) is multiplied by $50 (as the difference between the $100 penalty and the $50 first-violation penalty) to arrive at $33,100. This amount is subtracted from the over-stated penalty amount for a total value of $1,009,600 at issue for violations of section 206. Adding an additional 25% for attorneys' fees, the fourth cause of action places $1,262,000 into controversy.

### *e. Total Value of Plaintiff's Claims*

In summary, the Court finds that the record supports a finding of the following amounts in controversy in this action as of the January 2013 removal of the lawsuit:

- off-the-clock claim:        $1,742,757.85
- missed meal break:          $1,144,511.20
- waiting time penalties:     $1,281,645.30
- inaccurate wage statement:  $1,262,000.00

When these figures are aggregated, Defendants have demonstrated by a preponderance of the evidence that there is $5,433,414.35 in controversy and the motion to remand must therefore be denied.

### MOTION TO TRANSFER

Having decided that the action can remain in federal court, the next question is which federal court. Defendants move to transfer the lawsuit to the Central District of California pursuant to 28 U.S.C. § 1404(a). That statute gives a trial court discretion to transfer a lawsuit to another federal district where the case could have been brought originally "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Additional factors that the court may consider include:

(1) the location where the relevant agreements were

14

> negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also id.* at 498 (stating that the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness"). The party moving for transfer, here Defendants, bear the burden of showing that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

This lawsuit could have been filed in the Central District; indeed, it was originally filed in the Central District. However, as Defendants candidly concede, the convenience factors do not weigh in favor of transfer. (Dkt. No. 12-1 at 12.) Defendants operate branch offices throughout the state of California, thus the putative class members have no greater connection to the Central District than the Northern District. Plaintiff is a resident of the Eastern District and Defendants are headquartered in Alabama. Witnesses and the parties will have to travel whether this lawsuit is litigated here or the Central District. Defendants do offer evidence that their Human Resources—HR Partner responsible for human resources in California is based in the Central District, but she is the only identified potential witness located in the Central District, other than the putative class members who reside throughout California.

The additional factors are also neutral. There are no relevant agreements and both districts are in California and equally well-equipped to adjudicate California law. Plaintiff's choice of forum is entitled to little to no weight. First, she does not reside or work and did not work in the Northern District. *See Forrand v. Federal Express Corp.* 2008 WL 276389 *3 (N.D. Cal. Jan. 31, 2008). Second, because she brings this action as a putative class action her choice of forum is entitled to less deference. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Third, she candidly admits that she filed in the Northern District to avoid the Central District's local rule regarding the timing of filing motions for class certification. A plaintiff's choice of forum is entitled to less deference when she is engaged in forum shopping. *See Forrand*, 2008 WL 276389

1 at *3. The parties' contacts with this forum is also a neutral factor. Plaintiff did not work here, but Defendants operate branches in the Northern District and members of the putative class worked here. Defendants offer evidence as to the number of branches in Riverside County versus Alameda County—the county where Plaintiff filed in state court after the parties' stipulated dismissal of the Prior Action. The material question, however, is whether and to what extent Defendants operate branches (and thus employ putative class members) in the broader Northern District. Defendants offer no such evidence, and instead observe that "the class as a whole has no greater connection to the Northern District than to the Central District." (Dkt. No. 12-1 at 12.) For similar reasons, the difference in cost in litigating in the two forums, ease of access to proof, and availability of compulsory process are also neutral factors in this case.

The dispositive factor—and the one most vehemently urged by Defendants—is the interest of justice. Defendants contend that because Plaintiff filed suit here to avoid the ruling in the Prior Action the Court must transfer the case to discourage such forum shopping. In *Forrand*, for example, the case was proceeding in the Central District of California when the plaintiff failed to file a motion for class certification by the court-ordered deadline. The trial court ordered the case to proceed as an individual rather than a class action. 2008 WL 276389 at *1. While that action was still pending, the same counsel representing the plaintiffs in the Central District filed an identical action in the Northern District of California with a different named plaintiff. *Id.* The plaintiffs subsequently voluntarily dismissed the Central District action and then joined the Northern District action as plaintiffs. The Northern District trial judge transferred the action to the Central District based on the interest of justice. In particular, the court held that "because transfer of this case to the Central District of California would serve to discourage the type of forum shopping that Plaintiffs have engaged in, the interest of justice also weighs heavily in favor of transfer." *Id.* at *3; *see also Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) (transferring action to the Central District even though "the balance of convenience is in equipoise" because plaintiffs had dismissed an identical action in the Central District following an adverse ruling).

The Court agrees with Defendants that the interest of justice would warrant transfer to the

16

1   Central District if Plaintiff had voluntarily and unilaterally dismissed the Central District action
2   following the district court's notation that the case must proceed as an individual action.  What
3   distinguishes this case, however, is that Defendants *stipulated* in writing to Plaintiff's dismissal
4   without prejudice, and agreed that each side bear her/its own costs.  (Dkt. No. 12-8 ("Joint
5   Stipulation of Dismissal").)   Defendants did so without asking that any conditions be imposed on
6   the dismissal.  In all of the cases cited by Defendants, in contrast, the plaintiffs acted unilaterally.
7          At oral argument Defendants explained that they stipulated to dismissal because they knew
8   the judge would grant Plaintiff's request in any event.  (Dkt. No. 56 at 28.)  That the trial judge
9   would grant Plaintiff's request, however, does not mean that Defendants had to stipulate to
10  dismissal without conditions.  Indeed, courts often grant motions to dismiss a case without
11  prejudice only after imposing conditions.  *See Stevedoring Services of America v. Armilla Intern.*
12  *B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) ("costs and attorney fees are often imposed upon a
13  plaintiff who is granted a voluntary dismissal under Fed.R.Civ.P. 41(a)(2)"); Fed. R. Civ. P.
14  41(a)(2) ("an action may be dismissed at plaintiff's request only by court order, on terms that the
15  court considers proper");  *Whitehurst v. CVS Pharmacy,* CV 12-04163 Dkt. No. 22 (C.D. Cal. July
16  24, 2012) (granting motion for voluntary dismissal upon the explicit condition that "if the claims
17  made in this case are ever reasserted in another case, they must be brought before this Court").
18  Defendants explained further that when they agreed in writing to Plaintiff's dismissal they
19  believed she was going to re-file in the Central District once she was prepared to meet the Central
20  District rule regarding the timing of class certification motions; in other words, that she would get
21  to start from scratch in the Central District and not be bound by the Central District's earlier ruling
22  regarding proceeding as a putative class.  (Dkt. No. 56 at 37-39.)  When the Court asked
23  Defendants whether, if this case were transferred to the Central District, they would urge the
24  Central District to rule that it is too late for Plaintiff to file a motion for class certification,
25  Defendants refused to indicate that they would not.  (*Id.* at 39-41.)  Thus, in a sense, Defendants,
26  too, are forum shopping: they want the case transferred to the Central District, not because it is
27  more convenient or has a greater connection to the facts of this case, but because they hope to take
28  advantage of a ruling in the Prior Action even though they stipulated to dismissal of the Prior

17

1  Action without prejudice. *See Titti v. Hilton Worldwide, Inc.*, 2013 WL 1087730 *8 (E.D. Cal.
2  March 14, 2013) (finding the interest of justice factor neutral where plaintiff as well as defendants
3  were forum shopping). In these unique circumstances, Defendants have not met their burden of
4  demonstrating that transfer is warranted.
5        One final issue merits comment. Defendants insist that Central District Local Rule 83-
6  1.2.2 required Plaintiff to re-file in the Central District. The Court disagrees. The Rule merely
7  provides that if a case is dismissed before judgment and then re-filed in the Central District it shall
8  be assigned "to the judge to whom the first-filed action was assigned." The Court interprets this
9  rule to mean that if a previously dismissed case is re-filed in the Central District, or filed
10 elsewhere and then transferred to the Central District, under Local Rule 83-1.2.2 it shall be
11 assigned to the first-filed lawsuit judge. The cases Defendants recited at oral argument do not
12 hold otherwise. In *Titti*, the court merely observed that the case, if transferred, would be
13 reassigned to the judge that had dismissed the previously-filed case. 2013 WL 1087730 at *8.
14 Similarly, in *Kurtz v. Intelius, Inc.*, 2011 WL 4048645 *2 (Sep. 9, 2011), the court observed that
15 "had this case been initiated in the Central District, it would have been related to the [earlier-filed
16 matter] and heard by the same judge." *Kurtz* transferred the action to the Central District because
17 the nearly-identical action had already been litigated there and thus it made sense for the same
18 judge who adjudicated the merits before to review them again. *Id.* at *3. Here, in contrast, there is
19 no dispute that no decision on the merits was ever rendered in the Prior Action and thus judicial
20 economy would not be saved by transfer. The motion to transfer is DENIED.

## MOTION TO DISMISS

22       Now that the Court has ruled that the case will remain in the Northern District of
23 California, Defendants' motion to dismiss is ripe for decision. Defendants move to dismiss
24 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is
25 GRANTED. Plaintiff's Complaint lacks sufficient factual allegations to support a plausible
26 inference that "the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.
27 662, 678 (2009).
28       The Ninth Circuit has "repeatedly held that a district court should grant leave to amend

18

1  even if no request to amend the pleading was made, unless it determines that the pleading could
2  not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th
3  Cir. 2000). Defendants nonetheless argue that the Court should dismiss without leave to amend
4  because Plaintiff omitted the factual allegations from her Complaint to defeat CAFA jurisdiction.
5  The Court declines to do so. The published case cited by Defendants, *AmerisourceBergen Corp.*
6  *v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006), holds that leave to amend may be denied if
7  the *amendment* is sought in bad faith.[5] *Id.* at 95-52. Defendants are not arguing that the
8  amendment is sought in bad faith; instead, they appear to argue that Plaintiff unduly delayed
9  amending the Complaint. In the intervening year, however, the parties have been litigating the
10 jurisdiction of this action. At bottom, Defendants are asking this Court to impose terminating
11 sanctions, but the record does not support such extraordinary relief.

## CONCLUSION

As Defendants have demonstrated by a preponderance of the evidence that the CAFA amount in controversy is satisfied, this lawsuit may remain in federal court. Further, it will remain in the Northern District California. However, because Plaintiff does not allege sufficient facts to state a claim, it is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) with 20 days leave to file an amended complaint. The Court will hold an initial case management conference at 1:30 p.m. on July 31, 2014.

This Order disposes of Docket Nos. 12, 13 and 20. Further, in light of this ruling, related Civil Case No. 13-4598 JSC is dismissed without prejudice as moot and the Clerk is directed to close that case.

**IT IS SO ORDERED.**

Dated: May 27, 2014

---

[5] The only other case cited by Defendants to support the termination of this lawsuit with prejudice (Dkt. No. 13-1 at 19:5) is not citable as it is a Ninth Circuit unpublished decision from before January 2007. *See* U.S. Ct. of App. 9th Cir. Rule 36-3(c) ("Unpublished decisions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit," except in circumstances that do not apply here).

|  |
|---|
| JACQUELINE SCOTT CORLEY<br>United States Magistrate Judge |